Wilbert WASHINGTON, M.D.,
Appellant–Defendant,

v.

Wilton ALLISON, Appellee–Plaintiff.

No. 49A02–9112–CV–583.

Court of Appeals of Indiana,
Second District.

June 23, 1992.

Robert J. Shula, Richard S. Pitts, Lowe Gray Steele & Hoffman, Indianapolis, for appellant-defendant.

Carolyn Small Grant, Ecklund, Frutkin & Grant, Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

Wilbert Washington, M.D., appeals the trial court's adverse ruling on his motion to set aside a judgment of default·and a default judgment.

We affirm.

## ISSUES

1. Whether the judgment of default and the default judgment were void because of the manner in which the summons was served.

2. Whether the trial court abused its discretion in determining Dr. Washington failed to establish excusable neglect.

## FACTS

Wilton Allison filed suit against Dr. Washington in Marion Municipal Court 1 on November 1, 1990. The summons, issued that same day, directed individual service, personal or copy, upon Dr. Washington at 3737 North Meridian Street. The 3737 North Meridian Street address is the

medical office of Dr. Washington, a sole practitioner. The Sheriff's return of summons states that on November 2, 1990, a copy of the summons and a copy of the complaint were left at, and a copy of the summons was mailed to, 3737 North Meridian Street, Dr. Washington's dwelling place or usual place of abode. The officer who served the summons and complaint left the copies with a woman at a desk located behind a glass enclosure in the doctor's office.

On November 27, 1990, a judgment of default was entered against Dr. Washington and a hearing on damages set for January 3, 1991. A copy of the judgment of default, containing notice of the damage hearing, was mailed by Allison's counsel to Dr. Washington at the Meridian Street address on November 28, 1990. On January 3, 1991, in Dr. Washington's absence, a default judgment was entered against Dr. Washington in the amount of $15,000.

On January 15, 1991, Dr. Washington personally received at his residence an order to appear for proceedings supplemental. Following receipt of this order, Dr. Washington called the office of his liability insurer and left a message that he "was the named Defendant in a case alleging medical malpractice and to hire an attorney to represent me." Record at 155. Another copy of the order was personally served upon him, also at his residence, on February 15, 1991.

Dr. Washington denies receiving copies of the summons and complaint or any other pleading, order, or judgment prior to the January 1991 order to appear.

An appearance on Dr. Washington's behalf was entered on February 28, 1991, and a motion to set aside the judgment of default and the default judgment was filed on March 6, 1991. On September 3, 1991, following a hearing, the trial court denied Dr. Washington's motion. He appeals.

## DISCUSSION AND DECISION

We review the trial court's judgment for an abuse of discretion—an erroneous conclusion clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom. *Shotwell v. Cliff Hagan Ribeye Franchise, Inc.* (1991), Ind., 572 N.E.2d 487, 489.

### I.

Dr. Washington claims the trial court erred in not setting aside the judgment of default and the default judgment because the judgments are void for lack of service of summons.

■ It is Dr. Washington's position that, as an individual and a sole proprietor, Ind. Trial Rule 4.1 provides the appropriate manner of service of process by which a court would acquire jurisdiction over his person.[1] Allison claims Dr. Washington is an organization and, therefore, the appropriate Rule is T.R. 4.6.[2]

1. Trial Rule 4.1(A) reads:
   (A) In General. Service may be made upon an individual, or an individual acting in a representative capacity, by:
   (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment or receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or
   (2) delivering a copy of the summons and complaint to him personally; or
   (3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode[; or]
   (4) serving his agent as provided by rule, statute or valid agreement.
   (B) Copy Service to Be Followed With Mail. Whenever service is made under clause (3) or (4) of subdivision (A), the person making the

service also shall send by first class mail, a copy of the summons without the complaint to the last known address of the person being served, and this fact shall be shown upon the return.

2. Ind. Trial Rule 4.6 reads:
   (A) Persons to Be Served. Service upon an organization may be made as follows:
   (1) In the case of a domestic or foreign organization upon an executive officer thereof, or if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent;
   (2) In the case of a partnership, upon a general partner thereof;
   (3) In the case of a state governmental organization upon the executive officer thereof and also upon the Attorney General;
   (4) In the case of a local governmental organization upon the executive thereof, and if a

The undisputed evidence that Dr. Washington practices medicine by himself, as a sole practitioner, and as a sole proprietor, qualifies him as an individual within the meaning of T.R. 4.1 and not as an organization within the meaning of T.R. 4.6.

Trial Rule 83 provides that "[s]ubject to additional definitions herein, and unless the context otherwise requires, in these rules ... [o]rganization includes, without limitation, a domestic or foreign corporation, partnership, unincorporated association, business trust, governmental organization or an organization which is a representative." While the list of entities is not exhaustive, it is apparent the term "organization" as used in T.R. 4.6(A) does not include a sole proprietorship. The enumerated entities are of two types: unnatural persons, created by law, such as corporations, partnerships, trusts, or governmental organizations, and multiple-party groups, such as unincorporated associations. A sole proprietorship does not fit within either category. However, that fact is not particularly significant because T.R. 4.1 and T.R. 4.6 are discretionary rules.

■ Ind. Trial Rules 4.1 and 4.6 provide that service *may be made* upon an individual, in the case of T.R. 4.1, or upon an organization, in the case of T.R. 4.6. In contrast, other rules provide that service *shall be made* upon certain parties in a designated manner. *See, e.g.,* T.R. 4.2 (service upon infant or incompetents) and T.R. 4.3 (service upon institutionalized persons). The discretionary nature of T.R. 4.1 and T.R. 4.6, coupled with the provision in T.R. 4.15(F), that "[n]o service [of summons] shall be ... adjudged insufficient when [it] is reasonably calculated to inform the per-

son to be served that an action has been instituted against him ...," is evidence that personal jurisdiction is acquired by any method of service of summons which comports with due process. As we said in *Buck v. P.J.T.* (1980), 182 Ind.App. 71, 72–3, 394 N.E.2d 935, 936:

> [W]e must bear in mind ... [t]here is a difference between a form of service that is not reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to be heard and a form that, while reasonably calculated to give actual notice, fails to do so in a specific case. In the former, personal jurisdiction is not acquired because the proceeding fails to accord due process. In the latter, personal jurisdiction is present.

The question, then, is whether the service that was had at Dr. Washington's professional office is sufficient to confer personal jurisdiction upon the trial court. The trial court properly concluded that it is sufficient.

■ Due process requires service of notice in a manner reasonably calculated to inform the defendant of the pending lawsuit. *See Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; *Glennar Mercury–Lincoln, Inc. v. Riley* (1975), 167 Ind.App. 144, 338 N.E.2d 670, 675. Actual knowledge of the pending lawsuit derived from sources other than service is not relevant to the question whether the manner of service satisfies due process. *Glennar Mercury–Lincoln,* 338 N.E.2d at 675.

statute provides for an attorney to represent the local government organization, and an attorney occupies such position, then also upon such attorney;

(5) When, in subsections (3) and (4) of this subdivision, a governmental representative is named as a party in his individual name or in such name along with his official title, then also upon such representative.

(B) Manner of Service. Service under subdivision (A) of this rule shall be made on the proper person in the manner provided by these rules, for service upon individuals, but a person seeking service or his attorney shall not know-

ingly direct service to be made at the person's dwelling house or place of abode, unless such is an address furnished under the requirements of a statute or valid agreement, or unless an affidavit on or attached to the summons states that service in another manner is impractical.

(C) Service at Organization's Office. When shown upon an affidavit or in the return, that service upon organization cannot be made as provided in subdivision (A) or (B) of this rule, service may be made by leaving a copy of the summons and complaint at any office of such organization located within this state with the person in charge of such office.

■ Dr. Washington disputes the sufficiency of copy service, followed with mailing, when the service is had at the place of business of a sole proprietor, instead of his or her dwelling house or usual place of abode. However, Dr. Washington fails to make any showing there is anything *inherently* unreliable about service at a sole proprietor's place of business such that it fails to comport with due process.

The cases upon which Dr. Washington relies, such as *Poteet v. Bethke* (1987), Ind. App., 507 N.E.2d 652, and *Chesser v. Chesser* (1976), 168 Ind.App. 560, 343 N.E.2d 810, are unavailing. In *Poteet,* this court held that service at a residence from where the defendant had moved ten (10) months previously was not reasonably calculated to inform the defendant of the proceedings. Similarly, in *Chesser,* the defendant upon whom service was attempted at a residence had moved from the residence before service was attempted. In addition, in *Chesser,* the copy service was not accompanied by mail. Here, Washington was actively practicing medicine in the office at which the copy service was had at the time copies of the summons and complaint were left and a copy of the summons was mailed.

A more similar case is *Storm v. Mills* (1990), Ind.App., 556 N.E.2d 965. In *Storm,* the defendant was served by copy service at his place of employment and by mailing. However, unlike the instant case, the defendant in *Storm* stipulated that he had actual notice from the copy service. This court concluded the attempts of service at the business establishment were reasonable and that the attempts resulted in actual notice. Here, the service attempted at Dr. Washington's medical office, where he actively practiced his profession on a daily basis, is also reasonable, as it is reasonably calculated to inform him of the pendency of the action. Under these facts, we conclude that Dr. Washington's alleged lack of actual knowledge of the pending lawsuit is as irrelevant in determining the sufficiency of service as his actual knowledge would be in determining the insufficiency of service.

The trial court did not err in denying Dr. Washington's motion to set aside the judgment of default and the default judgment on the grounds the judgments were void for want of service of summons.

## II.

■ Dr. Washington argues that if the service is sufficient, the trial court nevertheless abused its discretion in denying his motion to vacate the judgment of default and the default judgment on the grounds of mistake and excusable neglect. The trial court did not err.

As the exclusive judge of the weight of the evidence and the credibility of the witnesses, the trial court was not bound to credit Dr. Washington's self-serving testimony denying notice of the pending lawsuit prior to the January 15, 1991, notice. In addition, while Dr. Washington testified he did not receive copies of the summons, complaint, or any other pleading, order, or judgment prior to the January 15, 1991 order to appear for proceedings supplemental, his affidavit in support of his motion to set aside the judgment of default and the default judgment, received in evidence at the hearing on his motion, is not consistent with his testimony. In the affidavit, Dr. Washington enumerates the documents he claims he did not see or receive until he conferred with his attorney. The list does not include the judgment of default containing notice of the hearing on damages that was forwarded to him by Allison's counsel. This conflict in Dr. Washington's testimony, Dr. Markstone's affidavit that he came away from a conversation with Dr. Washington held before December 14, 1990, "with the impression that there was some litigation either pending or eminent," Record at 216, and the court's discretion to disregard Dr. Washington's self-serving assertions, support the trial court's determination that Dr. Washington had notice of the pending lawsuit no later than the end of November 1990. Nevertheless, despite this notice, Dr. Washington did not contact his insurer or any other person regarding the lawsuit until he received, on January 15, 1991, the order to appear in the proceedings supplemental.

Dr. Washington explained that the delay between mid-January 1991, and his attor-

ney's appearance at the end of February 1991, was due to a miscommunication between his office and his insurance carrier; however, he failed to offer any evidence of mistake or excusable neglect between the time he received notice of the pending action and mid-January 1991, when he contacted his insurer.

The trial court's decision not to set aside the judgment of default or the default judgment does not constitute an abuse of discretion. We will not reconsider the issue of Dr. Washington's credibility. Thus, the determination that Dr. Washington failed to meet his burden of proving excusable neglect vis-a-vis the judgment of default and the default judgment is supported by the lack of evidence addressing the question of mistake or excusable neglect between the time Dr. Washington first received notice of the pending action and mid-January when he contacted his insurer.

Finally, we deny Allison's request for attorney fees for defending a frivolous appeal. There is no basis for the characterization.

Judgment affirmed.

BUCHANAN, and CHEZEM, JJ., concur.